```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

JOSEPH F. RISOLI P.E., LLC      :
     AND JOSE N. VILLALUZ,      :
                                :
     Plaintiffs,                :
                                :
v.                              :   Case No. 3:14-CV-1797(RNC)
                                :
JEH JOHNSON, ET AL.,            :
                                :
     Defendants.                :
```

RULING AND ORDER

Plaintiffs seek judicial review of decisions by the United States Citizenship and Immigration Services ("USCIS") and Administrative Appeals Office ("AAO") denying an application for a labor-based visa on behalf of Jose Villaluz. Defendants have moved for summary judgment and the motion has been fully briefed and argued. For reasons set forth below, the motion is granted.

I.   Background

Mr. Villaluz, an engineer, was born in the Philippines. On June 16, 2001, he married Maria Princesita Osmena, a United States citizen. Less than two months later, Ms. Osmena filed a Form I-130 Petition for Alien Relative on his behalf.[1]  AR 364-

---

[1] A United States citizen can petition, by means of form I-130, to have his or her non-citizen spouse classified as an immediate relative. See 8 U.S.C. § 1151(b)(2)(A)(i). If the petition is approved, the spouse can apply for lawful permanent resident status. See 8 U.S.C. § 1255(a). "Receiving immediate relative classification pursuant to an I-130 Petition is advantageous because the visas for individuals classified as immediate relatives 'are not subject to the worldwide levels or numerical limitations' on immigration prescribed by statute." Simko v. Bd. of Immigration Appeals, 156 F. Supp. 3d 300, 309 (D. Conn. 2015) (quoting 8 U.S.C. § 1151(b)).

1

66. On July 7, 2003, Ms. Osmena withdrew the petition, asserting that Mr. Villaluz "**used** [her] so he can stay legally in the United States." AR 340 (emphasis in original).

Several years later, on July 28, 2007, Ms. Osmena filed a second I-130 petition on Mr. Villaluz's behalf. AR 3-4. In a letter accompanying the petition, she stated that her request to withdraw the first petition resulted from "some misunderstanding during our adjustment period." AR 48. On July 29, 2008, Ms. Osmena withdrew the second petition. She wrote that Mr. Villaluz "married [her] so he can stay legally in United States" and asserted that the two did not live together and did not make deposits into their joint account, that he did not share money with her or help her with her finances, and that he was mean and abusive. AR 1.

On June 16, 2010, Mr. Villaluz's employer, Joseph F. Risoli P.E., LLC, filed a Form I-140 Immigrant Petition for Alien Worker on his behalf.[2] AR 433-37. The petition was denied on May 23, 2012, and Risoli appealed. AR 428-31. On March 18, 2013, the AAO denied the appeal, finding that (1) Mr. Villaluz married Ms. Osmena to evade the immigration laws and is therefore barred from consideration for immigration benefits and (2) Risoli failed to establish that Mr. Villaluz possesses the experience required

---

[2] This form provides a mechanism for employers to petition for labor-based visas on behalf of employees.

under applicable regulations.  AR 603-05.

## II. Standard of Review

Summary judgment may be granted if the movant demonstrates that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Because plaintiffs do not dispute the genuineness of the administrative record, the Court's inquiry "will focus on the legality of the agency decisions in this case, not on the existence or nonexistence of disputed issues of material fact." Simko, 156 F. Supp. 3d at 307; see also Martucci v. Hartford Life Ins. Co., 863 F. Supp. 2d 269, 274 (S.D.N.Y. 2012) ("The parties do not dispute the contents of the administrative record, so there is no genuinely disputed issue of material fact at hand. The only dispute concerns whether [the administrative decision], based on the undisputed administrative record, was wrong.").[3]

---

[3] Plaintiffs mention that a communication by Ms. Osmena referenced in one of the letters from USCIS is not part of the administrative record.  See AR 342 (stating that Ms. Osmena "requested that [her] letter to withdraw [the first I-130] petition be disregarded" but that her request could not be accommodated under applicable regulations).  It is unclear whether this communication was written or oral.  In any event, plaintiffs have not challenged the completeness of the administrative record or moved to enlarge the record to include this communication.  See Comprehensive Cmty. Dev. Corp. v. Sebelius, 890 F. Supp. 2d 305, 309 (S.D.N.Y. 2012) (noting that parties "may seek to show that materials exist that were actually considered by the agency decision-makers but are not in the record as filed" or "ask that the court consider extra-record evidence, i.e., evidence that was not necessarily considered by

Plaintiffs challenge the decisions at issue as "arbitrary, capricious, an abuse or discretion or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 43 (1983).  Agency action will be overturned only "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  <u>Id.</u>  "In other words, so long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made, a reviewing court will uphold the agency action, even a decision that is not perfectly clear, provided the agency's path to its conclusion may reasonably be discerned."  <u>Karpova v. Snow</u>, 497 F.3d 262, 268 (2d Cir. 2007).

III. <u>Discussion</u>

Defendants argue that the USCIS and AAO decisions must be upheld because they are not "arbitrary, capricious, an abuse or

---

the agency").

4

discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). They rely principally on the "marriage fraud bar," discussed below, which precludes a person from obtaining immigration-related benefits if he has entered into a fraudulent marriage to evade immigration laws. In particular, they contend that substantial and probative supports a finding that Mr. Villaluz duped Ms. Osmena into marrying him. I agree with their position on this point.

    A.    <u>The Marriage Fraud Bar</u>

Risoli's I-140 petition was denied in part because the agency concluded that Mr. Villaluz entered into a fraudulent marriage with Ms. Osmena for the purpose of evading the immigration laws. Under 8 U.S.C. § 1154(c), the agency is barred from approving immigration-related petitions if "(1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." <u>Id.</u> The prohibition is "nonwaiveable and perpetual in duration." <u>Simko</u>, 156 F. Supp. 3d at 310.

For the marriage fraud bar to apply, the agency must identify "substantial and probative evidence" of an attempt or conspiracy to enter into a fraudulent marriage to evade the immigration laws.  8 C.F.R. § 204.2(a)(1)(ii).  "[I]t is not necessary that the alien have been convicted of, or even prosecuted for, the attempt or conspiracy," so long as "the evidence of such attempt or conspiracy . . . [is] documented in the alien's file."  Matter of Tawfik, 20 I. & N. Dec. 166, 167 (BIA 1990).  The evidence must do more than create a reasonable inference of fraud, for "a reasonable inference does not rise to the level of substantial and probative evidence."  Id. at 168. If the agency determines that substantial and probative evidence of fraud exists, then "the burden shifts to the petitioner to establish that the beneficiary did not seek nonquota or preference status based on a prior fraudulent marriage."  Matter of Kahy, 19 I. & N. Dec. 803, 806-07 (BIA 1988).  In other words, the petitioner "must . . . rebut any evidence of marriage fraud . . . with proof that the prior marriage was bona fide, i.e., not fraudulent."  Bourisquot v. Holder, 569 F. App'x 35, 36 (2d Cir. 2014).

Thus, the inquiry here proceeds in two steps.  "First, the court must determine whether it was arbitrary and capricious for the agency to conclude that there was 'substantial and probative evidence' [of marriage fraud]. . . . Second, the court must

6

assess whether it was arbitrary and capricious for the agency to determine that the evidence subsequently submitted . . . failed to rebut the agency's conclusion that the marriage . . . was not bona fide." Simko, 156 F. Supp. 3d at 310.

    B.    Substantial and Probative Evidence

In concluding that substantial and probative evidence of marriage fraud is present here, the agency relied primarily on Ms. Osmena's letter withdrawing the second I-130 petition. In this letter, Ms. Osmena stated that Mr. Villaluz "took advantage" of her "because [she is] an American citizen" and married her in order to "stay legally in the United States." AR 1. Ms. Osmena went on to explain that she and Mr. Villaluz did not live together, their finances were not commingled, and they did not celebrate their anniversary. See id. The letter concluded: "I truly love him but he does not love me in return." Id.

Standing alone and viewed in isolation, the statements in Ms. Osmena's second withdrawal letter may be insufficient to support a determination that Mr. Villaluz duped her into marrying him for the purpose of evading the immigration laws. As plaintiffs contend, such statements on the part of a spouse who claims to have been duped, as compared to one who admits complicity, should not be taken at face value. And it may well be, as plaintiffs argue, that the agency would have been well-advised to interview Ms. Osmena in order to assess the

7

credibility of her statements, although it apparently had no statutory obligation to do so.

But other evidence in the record provides additional support for the agency's determination. The second withdrawal letter is consistent with the notarized letter sent by Ms. Osmena withdrawing the first I-130 petition she filed for Mr. Villaluz. The notarized letter states, "[t]he reason for the withdrawal is because my husband **used me** so he can stay legally in the United States." AR 340 (emphasis in original).[4] In addition, the record contains contradictory statements by Mr. Villaluz, Ms. Osmena, and others regarding the dates the couple lived together in Illinois, plus inconsistencies regarding Mr. Villaluz's prior marriage to a citizen of the Philippines. See Akinjiola v. Holder, Civ. No. ELH-12-2597, 2014 WL 641702, at *8 (D. Md. Feb. 14, 2014) (noting probative value of discrepancies in evidence); Matter of Phillis, 15 I. & N. Dec. 385, 387 (BIA 1975) (same, particularly with regard to living arrangements). The failure to "resolve the[se] inconsistencies by independent objective evidence" further supports the agency's decision. Matter of Ho,

---

[4] Plaintiffs argue that this letter should be given little weight because, when Ms. Osmena submitted the second I-130 petition, she asserted that her first withdrawal request was the result of "some misunderstanding during our adjustment period" and she "deeply regretted it." AR 48. I agree that the quoted statements must be carefully considered. But the statements do not undercut the agency's decision. A reasonable decisionmaker could discount them in light of Ms. Osmena's subsequent conduct.

8

19 I. & N. Dec. 582, 591 (BIA 1988).

After considering Ms. Osmena's second letter in light of the entire record, I cannot conclude that it was arbitrary and capricious for the agency to credit the statements in the letter without interviewing Ms. Osmena. See Adi v. United States, 498 F. App'x 478, 482-83 (6th Cir. 2012) (rejecting claim that failure to interview spouse was arbitrary and capricious). Accepted as true, Ms. Osmena's statements in the letter adequately support the agency's determination that Mr. Villaluz deceived her into marrying him in order to evade the immigation laws.[5]  The agency was therefore entitled to put plaintiffs on notice of its intent to deny the I-140 petition, shifting the burden to them to produce evidence showing the marriage was bona fide.

C.  Rebuttal Evidence

Plaintiffs argue that it was arbitrary and capricious for the agency to determine that the evidence they submitted failed to rebut the finding that the marriage was not bona fide.

---

[5] Plaintiffs argue that this letter should be given little weight because it is not notarized and is at least arguably inconsistent with other evidence in the record.  I agree that the probative value of the letter needs to be assessed in light of the totality of the circumstances, including the lack of a notarized signature and the arguable inconsistencies plaintiffs have identified.  However, in the context of this case, the lack of a notarized signature does not detract significantly from the probative value of the letter, and the agency could reasonably discount the inconsistencies.

Evidence that "the marriage was not entered into for the purpose of evading the immigration laws . . . could take many forms, including, but not limited to, proof that the beneficiary has been listed as the petitioner's spouse on insurance policies, property leases, income tax forms, or bank accounts, and testimony or other evidence regarding courtship, wedding ceremony, shared residence, and experiences." Matter of Soriano, 19 I. & N. Dec. 764, 766 (BIA 1988).  I disagree.

To rebut the agency's finding, Risoli relied primarily on documents submitted by Ms. Osmena and Mr. Villaluz in connection with the second I-130 petition.  These included airline reservations showing that the couple visited each other, records purporting to show that they frequently spoke by telephone, and bank statements and other documents showing commingling of finances.  The agency discounted the first of these, stating that "[v]isiting each other six times over the course of a seven-year marriage does not constitute regular visits."  AR 619.  The agency also did not credit the phone records because there was no evidence linking Ms. Osmena to any of the relevant phone numbers.  That is, there was no way to determine on the basis of the records submitted whether Mr. Villaluz and Ms. Osmena actually spoke every day, as their attorney claimed.  Finally, the agency found that the evidence showing commingling of finances was superficial.  As the agency noted, "[n]one of these bank

10

statements contain joint usage or use for any joint bills," and none show "either [Mr. Villaluz] or [Ms. Osmena] depositing their paychecks into [the] account." AR 620.

Risoli also offered an affidavit prepared by Mr. Villaluz. On the whole, the affidavit creates more confusion than it resolves, and it was within the agency's discretion to discount it. For example, Mr. Villaluz avers that his previous marriage (to a citizen of the Philippines) was annulled but that he "never had to appear in court." AR 530-31. However, a document submitted in connection with the second I-130 petition, in support of Mr. Villaluz's contention that he believed his prior marriage was anulled before he married Ms. Osmena, refers to a trial and Mr. Villaluz taking the witness stand. AR 642. The affidavit also contradicts other evidence in the record regarding the time period when Mr. Villaluz and Ms. Osmena lived together in Illinois.

Despite being given the opportunity to present additional evidence on behalf of the I-140 petition, plaintiffs did not provide an affidavit from Ms. Osmena or explain why they could not get one. In addition, the record does not contain a plausible explanation for the couple's living arrangements. Though Mr. Villaluz's decision to relocate to Connecticut can be explained by the availability of better job opportunities, it is unclear why Ms. Osmena remained in Illinois rather than joining

11

her husband in Connecticut.

Overall, the evidence in the record does not suggest that the marriage between Mr. Villaluz and Ms. Osmena was based on mutual affection, as plaintiffs argue.  Rather, viewed objectively, it adequately substantiates Ms. Osmena's claim that Mr. Villaluz deceived her into marrying him.  The agency was therefore entitled to rely on its initial finding in denying Risoli's I-140 petition.[6]

IV.  Conclusion

Accordingly, the motion for summary judgment is granted. The Clerk may enter judgment and close the file.

So ordered this 31st day of March 2017.

/s/<br>
Robert N. Chatigny<br>
United States District Judge

---

[6] Because I conclude that the agency decision must be upheld on this ground, I do not reach the agency's alternative justification for denying the petition -- that plaintiffs failed to show that Mr. Villaluz possessed the work experience required to receive an employment-based immigration status adjustment.

12